**INDUSTRIAL MUTUAL ASSOCIATION, INC., Plaintiff-Appellant,**

**v.**

**AMALGAMATED WORKERS, LOCAL UNION NO. 383, et al., Defendants-Appellees.**

No. 82–1699.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 13, 1983.

Decided Jan. 18, 1984.

John A. Entenman, argued, Dykema, Gossett, Spencer, Goodnow & Trigg, Detroit, Mich., for plaintiff-appellant.

W. Glen Jeakle, II, argued, Gregory, Van Lopik, Korney & Moore, Detroit, Mich., for defendants-appellees.

Before MARTIN and CONTIE, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

CONTIE, Circuit Judge.

Plaintiff Industrial Mutual Association, Incorporated, (I.M.A.) brought this action under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to vacate an arbitration award. The district court entered a judgment upholding the award and I.M.A. appeals. The arbitration award ordered the reinstatement of employees Howard Mayball and Doris King and cancelled certain debts that they owed to I.M.A. Because we find the arbitrator's order of reinstatement to have a legitimate foundation in the Collective Bargaining Agreement, we affirm that portion of the district court's judgment which upheld the arbitrator's award of reinstatement. We do not find, however, that the cancellation of the debts can be said to draw its essence from the Collective Bargaining Agreement. We therefore reverse and remand that portion of the district court's judgment which upholds the cancellation of the debts.

I.

The facts underlying this litigation are undisputed. I.M.A. is engaged in the business of selling food, work supplies, and miscellaneous other goods to factory workers in Genesee County, Michigan. I.M.A. employs "storekeepers" who purchase their inventory from I.M.A. and sell these goods to their customers. I.M.A. pays the storekeepers a percentage of their gross sales.

In May of 1979, defendants Mayball and King were discharged from their employment as storekeepers for failing to make up shortages in their accounts with I.M.A. It is undisputed that Mayball's and King's stores had unbalanced shortages of $3,833.00 and $2,566.50, respectively, at the time of their discharges. There has been no showing that the loss was due to theft or any other agency beyond the control of Mayball and King.

A Collective Bargaining Agreement was in effect at all relevant times between I.M.A. and defendant Amalgamated Workers, Local Union No. 383, Retail, Wholesale and Department Store Union, AFL–CIO. Article VII, section 3 of this agreement

provided that "[s]torekeepers shall be responsible for all shortage loss, except in the case of a proven break-in of a store or loss due to mechanical failure of machines, in which case the Employer shall be responsible for such loss." Article VII, section 5 provided that "[a]ll accounts shall be balanced (including a deduction for shortage) and payable as near the 15th of the next month as possible." Article I, section 9 provided that "[i]t is understood and agreed that the Employer has all the customary and usual rights, powers, functions, and authority of Management, including the right to discipline and discharge for proper cause."

Mayball and King filed grievances over their discharges. The grievances proceeded through arbitration in accordance with Article III of the Collective Bargaining Agreement. On May 21, 1980, the arbitrator ruled that I.M.A. had improperly discharged Mayball and King and ordered their reinstatement. The arbitrator did not award backpay, but cancelled the debts that Mayball and King owed I.M.A. for the shortages. He found that the clause in the agreement requiring storekeepers to balance their accounts did not provide a sanction. Therefore, he reasoned, the discharges had to be evaluated under the "proper cause" standard of Article I, section 9. Considering the circumstances of the case, including the grievants' seniority, past work records, and I.M.A.'s prior treatment of similar cases, the arbitrator concluded that the discharges were not for proper cause.

On July 2, 1980, I.M.A. filed a complaint under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and § 10 of the Federal Arbitration Act, 9 U.S.C. § 10, to vacate the arbitrator's award. The complaint alleged that the arbitrator altered and modified the terms of the Collective Bargaining Agreement, specifically Article VII, sections 3 and 5 and Article 1, section 9, and thus acted in excess of his authority. The parties filed opposing motions for summary judgment with the district court and, on August 26, 1982, a judgment was entered against I.M.A. I.M.A. filed a timely

notice of appeal. This court has jurisdiction under 28 U.S.C. § 1291 and 29 U.S.C. § 185.

## II.

■ We begin by noting the narrow standard of review of arbitration awards. *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) established the rule that the "refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements." *Id.* at 596, 80 S.Ct. at 1360. Our review is limited to determining whether the award "draws its essence from the collective bargaining agreement." *Id.* at 597, 80 S.Ct. at 1361. As the parties "have bargained for the arbitrator's decision, not the court's," *Anaconda Co. v. District Lodge No. 27 of the International Association of Machinists*, 693 F.2d 35, 37 (6th Cir.1982) (per curiam), our only duty is to assure that the arbitrator delivers this bargained-for interpretation.

I.M.A. attacks the arbitrator's award on several fronts. The arbitrator found that "there is no clear penalty/or deadline for a failure to pay." I.M.A. argues that this ignores the express terms of Article VII, section 5, which provides that "accounts shall be balanced . . . and payable as near the 15th of the next month as possible." This language, I.M.A. contends, provides both a clear deadline and a clear penalty.

■ We need not pause long over this argument. If there is any deadline imposed by this clause, it is an uncertain one. The requirement is only that the accounts be payable *"as near* the 15th of the next month *as possible."* This language could, with justification, be relied upon by the arbitrator to find that there is an element of flexibility in the process of settling accounts. Moreover, the arbitrator could have found that the word "payable" is not necessarily to be equated with the word "due." Payable could as easily mean that the accounts could be balanced during a period of time beginning on the fifteenth of the next month and extending to a future, unspecified date. Accordingly, the arbitra-

tor was justified in reading this clause as not setting a firm deadline.

■ Nor can we say that the arbitrator erred in determining that the agreement provided no automatic sanction for the failure to balance accounts. Since the clause does not specify the consequences of a failure to balance the accounts, it cannot be said to have a clear penalty. Accordingly, the arbitrator was entitled to conclude that the discharges could only be justified if they were for proper cause under Article I, section 9.

This construction of the agreement is clearly permissible and may not be questioned by a reviewing court. "[I]t is immaterial whether we believe the arbitrator's analysis to be the *best* interpretation of the collective bargaining agreement; it is sufficient that it be a *permissible* interpretation." *Retail Clerks Union Local No. 1557 v. Murfreesboro Vending Service, Inc.*, 689 F.2d 623, 626 (6th Cir.1982) (per curiam) (emphasis in original).

I.M.A. also contends that the arbitrator added terms to the agreement. It argues that, although the arbitrator found that "the contract . . . does not take into consideration years of loyal and sustained service," he ordered reinstatement based in part upon the length and quality of Mayball's and King's work record. There are two components to this portion of I.M.A.'s argument. First, I.M.A. argues that the express terms of the agreement do not allow a consideration of employee work records and that the arbitrator erred in relying on these records. Second, I.M.A. points out that regardless of how the agreement ought to be interpreted, the arbitrator expressly found that it "does not take into consideration" an employee's work record. In basing the award in part upon these records after making a finding that they are not relevant under the agreement, the arbitrator, I.M.A. argues, was necessarily modifying or adding to the agreement.

■ Our response to these contentions is twofold. First, when analyzing a discharge under a proper cause provision or other

clause of similar import, it is entirely appropriate for the arbitrator to consider all of the circumstances. As we said in *Anaconda:*

> The arbitrator was not modifying the provisions of the collective bargaining agreement on absenteeism but rather was interpreting the provision that the Company treat its employees "fairly and justly." While this provision is very broad and gives the arbitrator great discretion, the Company agreed to such discretion when it signed the agreement.

693 F.2d at 37. I.M.A. similarly agreed to an element of arbitral discretion when it signed this agreement. It may not now complain of the exercise of that discretion.

Second, I.M.A. may not benefit from any ambiguity in the arbitrator's form of expression. The arbitrator's decision could be read as stating that work history is expressly excluded under the agreement, but that he would consider it anyway out of a sense of fairness. The Supreme Court has made it clear, however, that reviewing courts are not to vacate awards merely because an arbitrator's reasoning could be interpreted in several ways, one of which would lead to the conclusion that the award does not draw its essence from the contract.

> A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award. Arbitrators have no obligation to the court to give their reasons for an award. To require opinions free of ambiguity may lead arbitrators to play it safe by writing no supporting opinions. This would be undesirable for a well-reasoned opinion tends to engender confidence in the integrity of the process and aids in clarifying the underlying agreement. Moreover, we see no reason to assume that this arbitrator has abused the trust the parties confided in him and has not stayed within the areas marked out for his consideration.

*United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 598, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960) (footnote omitted).

■ I.M.A. also seizes upon the arbitrator's statement that "[j]ustice must be tempered with mercy." I.M.A. argues that the arbitrator improperly substituted his own judgment for that of the company on the question of the proper sanction for Mayball's and King's failure to balance their accounts. We have already stated that the agreement provided no clear and certain penalty for the failure to balance accounts and that the arbitrator could have properly analyzed this case under the proper cause provision. The arbitrator was, therefore, not substituting his judgment for that of I.M.A. but was instead construing the meaning of proper cause. Under the arbitrator's reading of the agreement, which we have already indicated was permissible, discharges could be made only upon a showing of proper cause even if an employee admittedly violated a work rule; under this reading, the arbitrator properly considered the mitigating factors to determine whether there was proper cause.

The cases cited by I.M.A., stating that an arbitrator may not substitute his own judgment for that of the employer, are easily distinguishable. In each of these cases the arbitrator ignored clear and unambiguous language contained in a collective bargaining agreement. *See Buckeye Cellulose Corp. v. District 65, Division 19, UAW,* 689 F.2d 629 (6th Cir.1982) (per curiam); *Timken Co. v. Local Union No. 1123, United Steelworkers of America,* 482 F.2d 1012 (6th Cir.1973); *Local 342, UAW v. T.R.W., Inc.,* 402 F.2d 727 (6th Cir.1968), *cert. denied,* 395 U.S. 910, 89 S.Ct. 1742, 23 L.Ed.2d 223 (1969). *Compare Fabricut, Inc., v. Tulsa General Drivers, Warehousemen and Helpers Local 523,* 597 F.2d 227 (10th Cir.1979) *with Mistletoe Express Service v. Motor Expressmen's Union,* 566 F.2d 692 (10th Cir. 1977). The issue before the arbitrator was not merely whether Mayball and King had violated Article VII, section 5, but also, if they were in violation, whether a discharge was warranted under the proper cause standard. In deciding the latter question, the

arbitrator could consider the circumstances surrounding the discharge.

■ After considering all of I.M.A.'s arguments,[1] we conclude that the award ordering reinstatement draws its essence from the agreement and should be enforced.

### III.

We reach a different conclusion, however, as to that portion of the award which cancels the debts of Mayball and King to I.M.A. This relief is in conflict with the express terms of the agreement and therefore fails to draw its essence from the agreement. After ordering the reinstatement of Mayball and King, the award states: "I do not award any monetary damages or wages for lost time, but instead do award to each grievant cancellation of his outstanding debt to I.M.A." There are two ways to view this relief. Under either view this portion of the award cannot be upheld.

First, this portion of the award could be read as a conclusion by the arbitrator that backpay is inappropriate in this case but that, considered as an entirely separate matter, Mayball and King ought not to be held liable to I.M.A. for the shortages. The arbitrator did not state any reason for questioning the validity of the debts. He did not find that the clause charging storekeepers with the responsibility for shortages means anything other than what its plain language indicates. The award could be read, however, as resting on a conclusion that the storekeepers either are not liable for shortages under the contract or should not be liable for them despite the contract.

■ Article VII, section 3 of the agreement unequivocally places financial responsibility for shortages on the storekeepers. That section states that "[s]torekeepers shall be responsible for all shortage loss." This language is precise and clear; it is not susceptible to construction or interpretation. An arbitrator is not free to "decide whether or not he likes the terms of a written collective bargaining agreement." *Grand Rapids Die Casting Corp. v. Local Union No. 159, UAW*, 684 F.2d 413, 416 (6th Cir.1982). Nor can he ignore plain and unambiguous provisions of the agreement. *Sears, Roebuck and Co. v. Teamsters Local Union No. 243*, 683 F.2d 154, 155–56 (6th Cir.1982) (per curiam), *cert. denied,* —— U.S. ——, 103 S.Ct. 1274, 75 L.Ed.2d 495 (1983); *Detroit Coil Co. v. International Association of Machinists & Aerospace Workers, Lodge No. 82*, 594 F.2d 575, 579 (6th Cir.), *cert. denied,* 444 U.S. 840, 100 S.Ct. 79, 62 L.Ed.2d 52 (1979). A determination that the agreement does not place the burden of shortage loss on the storekeepers does considerable violence to the straightforward command of the agreement and the cancellation of the debts may not, therefore, rest upon this ground.

The district court attempted to justify this portion of the award by construing it as cancelling the debts in lieu of backpay or as a setoff against backpay. Even under this reading, however, the reward remains insupportable.

---

1. I.M.A. urges two other grounds for the vacation of the arbitrator's award. First, I.M.A. contends that the arbitrator's finding that "the country has been in the throes of a major financial upheaval" was not supported by any evidence and was not a relevant consideration under the terms of the agreement. After carefully reviewing the arbitrator's opinion, we believe that the arbitrator did not rely on this finding in rendering the award. It would be a gross error for this court to order the vacation of an arbitrator's award merely because of such a gratuitous finding. *See United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. at 598, 80 S.Ct. at 1361. In a similar vein, I.M.A. argues that the arbitrator failed to consider the testimony of Robert Henderson, which was favorable to I.M.A. I.M.A. bases this conclusion on the failure of the arbitrator to summarize the testimony of Henderson in its opinion. I.M.A. has not directed us to any case vacating an award because of the failure to recite all of the testimony presented nor have we been able to locate any. This is not surprising since, under the holding of *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, an arbitrator is not required to produce any opinion at all, much less one that meets certain supposed considerations of form.

An arbitrator's award must be "derived in some rational way from the collective bargaining agreement." *Detroit Coil*, 594 F.2d at 579. An award without any logical basis in the contract or in the evidence cannot be sustained. An arbitrator sits to resolve labor disputes by applying the collective bargaining agreement, the common practices of the workplace, and general principles of federal labor law; he does not sit to "dispense his own brand of industrial justice." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).

The problem with cancelling Mayball's and King's debts as a quid pro quo for not awarding backpay is that there is no demonstrable relationship between the amounts due as backpay and the debts. Mayball and King were discharged at the same time but Mayball's award is nearly fifty percent greater than King's. There is nothing in the record to justify this discrepancy. This is a further indication that the award does not bear a logical relationship to backpay.[2]

Since there is no rational basis for cancelling the debts, this portion of the award cannot be enforced. This does not mean, however, that the entire award is unenforceable. As indicated above, the portion of the award which orders reinstatement does draw its essence from the Collective Bargaining Agreement. In such a circumstance, we do not "have only two choices, either to enforce or to vacate the award." *See Grand Rapids Die Casting*, 684 F.2d at 416. Rather than vacating an entire award when only a portion of it is defective, the better practice is to excise that which cannot be enforced and leave intact the remaining, valid portion of the award. *See General Warehousemen and Helpers Local 767 v. Standard Brands, Inc.*, 579 F.2d 1282, 1294–95 (5th Cir.1978) (en banc), *cert. dismissed*, 441 U.S. 957, 99 S.Ct. 2420, 60 L.Ed.2d 1075, 443 U.S. 913, 99 S.Ct. 3103, 61 L.Ed.2d 877 (1979). This procedure implements the federal labor policy of lending finality to arbitration awards. *See United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). This disposition is particularly appropriate where, as is the case here, the only flaw in the award is the calculation of damages and that matter is wholly separate from the remainder of the award.

Accordingly, we will remand the issue of backpay to the arbitrator.[3] We

2. At least one other court, when faced with a similar problem, has used a somewhat different analysis. In *Westinghouse Electric Corp. v. International Brotherhood of Electrical Workers*, 561 F.2d 521 (4th Cir.1977), *cert. denied*, 434 U.S. 1036, 98 S.Ct. 771, 54 L.Ed.2d 783 (1978), the court held that a monetary award which bore no logical relationship to the monetary loss of the employees amounted to an award of punitive damages. It then held that since there was no conduct justifying punitive damages, the award could not be upheld. *See also Baltimore Regional Joint Board v. Webster Clothes, Inc.*, 596 F.2d 95 (4th Cir.1979). We find this quite clever but unnecessary. We too could characterize this award as punitive since it bears no relationship to any monetary loss of Mayball and King. A more straightforward approach to monetary awards unsupported by the agreement or the evidence, however, is less likely to engender future confusion. Accordingly, we choose not to rest our decision on this basis.

3. We recognize that this disposition might not have been possible under the common law of arbitration contracts. Generally, the common law required courts either to vacate or to enforce the award in whole; courts could not remand a portion of the award to the arbitrator for reconsideration. *See Locals 2222, 2320–2327, International Brotherhood of Electrical Workers v. New England Telephone and Telegraph Co.*, 628 F.2d 644, 647 n. 5 (1st Cir.1980). This rule was based on the notion that after an arbitrator has rendered an award, his contractual powers have lapsed and he is "*functus officio.*" *See id.*; Annot., 37 A.L.R.3d 200 (1971). This rule, however, has its limits. A remand is proper, both at common law and under the federal law of labor arbitration contracts, to clarify an ambiguous award or to require the arbitrator to address an issue submitted to him but not resolved by the award. *See La Vale Plaza, Inc., v. R.S. Noonan, Inc.*, 378 F.2d 569 (3d Cir.1967) (common law of Pennsylvania); *Grand Rapids Die Casting*, 684 F.2d at 416 (federal common law under § 301). Common law rules of arbitration do not, of course, apply to actions to enforce or vacate labor arbitration awards under § 301. *See*

emphasize that nothing in this opinion is intended to address the propriety of a properly formulated award of backpay. On remand the arbitrator should consider whether or not backpay is appropriate and, if it is, he should determine the amount of the award, stating his method of arriving at such a figure. We hold only that the arbitrator was without authority to cancel the debts of Mayball and King and that the award could not be justified as an award of backpay because its size bore no logical relationship to the employee's lost wages.

The judgment of the district court insofar as it enforces the award of reinstatement of Mayball and King is AFFIRMED. The judgment insofar as it enforces the cancellation of the debts of Mayball and King to I.M.A. is REVERSED. The case is REMANDED to the district court with instructions to remand the issue of monetary damages to the arbitrator.

*Textile Workers v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). The circumstances in which it is proper to remand a labor arbitration award are therefore not limited to the two situations in which the common law would allow a remand. *See Standard Brands, Inc.,* 579 F.2d at 1294. In fashioning the federal common law under § 301 which will govern the propriety of a remand, the substantial federal policy of making arbitrator's awards final must take precedence over the somewhat crusty common law doctrine of *"functus officio."* Accordingly, we will give final effect to a valid portion of an arbitrator's award, deny enforcement of a separate invalid portion, and remand the latter to the arbitrator. *See Standard Brands, Inc.,* 579 F.2d at 1294–96.