786 F.2d 1164
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
THE GATES RUBBER COMPANY, Plaintiff-Appellant
v.
LOCAL UNION NO. 780, UNITED RUBBER, CORK, LINOLEUM AND
PLASTIC WORKERS OF AMERICA, AFL-CIO, Defendant-Appellee.
 84-5964
 United States Court of Appeals, Sixth Circuit.
 2/19/86
 
 W.D.Ky.
 AFFIRMED
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY
 Before: MERRITT and WELLFORD, Circuit Judbes; and EDWARDS, Senior Circuit Judge.
 MERRITT, Circuit Judge.
 
 
 1
 The Gates Rubber Company ('Gates,' or 'the company') brings this action against Local 780, United Rubber, Cork, Linoleum and Plastic Workers of America, AFL-CIO ('Local 780' or 'the Union') under Sec. 301 of the Labor-Management Relations Act to vacate an arbitration award, which ordered reinstatement to 'lay off status' and back pay to a Gates employee who was fired for being physically incapable of performing his last job. Because we find that the arbitrator did not exceed the scope of his authority and that his award draws its essence from the contract, we affirm.
 
 I.
 
 2
 Harold Doty is a member of Local 780 and a Gates employee since 1970. In 1973 he suffered a back injury while at work which limited his ability to lift heavy objects (over 25 pounds) and to stoop and bend. In August of 1974 Doty was given what the parties call a 'utility job' which required minimal physical exertion. Doty performed this job satisfactorily for six years; on several occasions the employer and the union arranged to bypass Doty during periods of layoff so that he could keep the utility job.
 
 
 3
 In June, 1980 Gates implemented a large scale layoff which eliminated the shift Doty worked on. Doty did not have enough seniority to bump any employee in a utility classification on another shift. Gates suggested that Doty be given 'super-seniority' in order that he might be able to continue working. This could have been authorized under Article XIV, Section 5 of the collective bargaining agreement in force at this time.[1] The Union, however, rejected this offer.
 
 
 4
 On June 11, 1980 Gates offered Doty the job of millroom trucker, with instructions to let his supervisor know if the job proved to be too much for him. After a couple of days Doty informed his supervisor that he was physically unable to manage the job. There were no other jobs available to Doty given his seniority and medical restrictions. Therefore, on June 18, 1980, Gates gave Doty a non-disciplinary discharge.
 
 
 5
 On June 20, 1980 Doty grieved his termination. The parties failed to resolve the grievance. Subsequently, Arbitrator Beckman heard the case and on September 19, 1983 Beckman issued an award (JA, at 63-76) holding that Doty had not been discharged for just cause as the contract required. Beckman directed Gates to restore Doty's seniority and granted conditional back pay and reinstatement. Both were conditioned on Doty's ability to prove 'he would have subsequently been recalled in the ordinary course of events to a job he had the ability to perform.' (JA, at 76)
 
 
 6
 Apparently Doty was recalled at some point and is now working again at Gates. (Appellee's Brief, at 4.) Gates, however, appeals the back pay provisions of the award.
 
 II.
 
 7
 Gates makes two distinct arguments in this appeal. First, it argues that the arbitrator impermissibly exceeded his authority by considering the propriety of the layoff procedures, when the only issue before him was the narrow question whether there was 'just cause' to terminate Doty. Second, Gates insists that the back pay remedy is ambiguous and should be vacated because it fails to provide for a setoff of Doty's other earnings. Gates submits that the windfall Doty will receive is 'unintended and inappropriate.'
 
 
 8
 The judicial standard of review of an arbitration award is narrow and an award need only 'draw[ ] its essence from the collective bargaining agreement,' and be a 'permissible interpretation.' Industrial Mutual Assoc. v. Amalgamated Workers, Local Union No. 383, 725 F.2d 406, 409 (6th Cir. 1984).
 
 
 9
 In spite of Gates' contentions, it appears that the arbitrator properly understood this was a case involving the propriety of the discharge procedure. The layoff issue came into play only because Doty's grievance implicitly invoked the right to be laid off (and not returned to work), since this problem arose in the context of mass layoffs.[2] What the arbitrator in fact decided was that, in light of Gates' past practice[3] of accommodating Doty's special needs, it was unjust to fire him instead of laying him off like everyone else. Specifically, he noted:
 
 
 10
 . . . the act of discharging the grievant under the circumstances in evidence was arbitrary and unreasonable. In other words, the Company failed to meet its burden of proving just cause for the discharge.
 
 
 11
 (JA, at 73)
 
 
 12
 The Company urges us to keep in mind that it repeatedly gave Doty special consideration and treated him benevolently. However, we find nothing in the record which suggests the arbitrator could not interpret this past practice as estopping Gates from 'abruptly [refusing to] recogniz[e] those limitations.' (JA, at 73) Indeed, from 1974 to 1980 Gates recognized and accommodated Doty's special needs. Gates' position now is that this gave rise to no continuing obligations.
 
 
 13
 In further support of its position Gates relies on General Drivers, Warehousemen and Helpers, Local Union No. 89 v. Hays & Nicoulin, Inc., 594 F.2d 1093 (6th Cir. 1979). However, Hays & Nicoulin involved an employee who was discharged because he was too ill to perform any job at all. The contract at issue in Hays & Nicoulin provided that it was entirely up to the employer to decide who was fit to work. In order to get around this problem the arbitrator applied the layoff provisions of the contract, even though Hays & Nicoulin was a straight discharge case. Here, the arbitrator decided that there was no just cause to discharge Doty and, because his shift was on layoff, concluded that the proper remedy was a reversion to layoff status. There is nothing in the record which suggests the arbitrator exceeded his authority or misunderstood the issue before him.
 
 
 14
 Gates second argument is that the arbitrator's remedy is vague and unfair since it would allow Doty to recover full wages without any set-off. We do not understand why Gates believes the award is 'vague,' since there is no disagreement among the parties as to its interpretation. Article III, section 9 of the parties' collective bargaining agreement provides that:
 
 
 15
 Should it subsequently be determined that the employee shall be reinstated, any award for back pay shall have deducted therefrom, any pay received from other sources during the time the employee was off work due to the termination or suspension, and/or any unemployment compensation received during such time off, except for outside income which the employee may have been receiving previously.
 
 
 16
 (JA, at 19)
 
 
 17
 Thus, there was no need for the arbitrator to decide whether a set off was appropriate. The contract plainly requires it.
 
 
 18
 The judgment of the District Court affirming the arbitrator's decision in its entirely is affirmed.
 
 WELLFORD, Circuit Judge, dissenting:
 
 19
 I respectfully dissent, because I believe the arbitrator in this case imposed upon the parties his own notion of industrial justice with the special benefit of hindsight. The only issue in this case involving the discharge of Harold Doty was whether that termination was authorized under the particular circumstances by the collective bargaining agreement between the parties to this dispute. While the arbitrator at the outset of his opinion, rendered three years after the discharge in question, listed as 'relevant contract provisions' those articles dealing with 'seniority,' 'safety and workmen's compensation,' and 'general rules', the only material section of the contract contained the following language:
 
 
 20
 RIGHTS OF MANAGEMENT. The management and operation of the Plant and the direction of the working force, including the making and enforcing of reasonable rules to assure orderly and efficient plant operations; the determination of employee competency; the right to hire, to transfer, to promote, to demote, to suspend or discharge for cause; to lay off for lack of work, and determination of the existence of lack of work, are rights vested exclusively in the management of the Company . . ..
 
 
 21
 Issues arising out of the exercise of the rights reserved to management as enumerated above, and all other rights of management not limited by the clear and explicit language of a clause of this Agreement, shall not be subject to the grievance procedure of this Agreement or arbitration. If the Company in exercising its inherent rights to manage, violates any of the express provisions of this Agreement, the Union may file a grievance . . ..
 
 
 22
 The majority has set out the background facts, essentially uncontested, with respect to the matter submitted to arbitration. In sum, for a number of years after being injured, Doty was retained by Gates Rubber Company despite his disability under a provision of the contract, set out in footnote 1, providing for 'super-seniority' and recognizing that 'it may be necessary for the Company and the Union to mutually agree upon granting super-seniority . . . for a specific period of time.' When it became necessary, as a part of the unquestioned prerogative of management, to cut back on plant operations due to economic forces (described by the majority as 'a large scale layoff which eliminated the shift Doty worked on') efforts were made by the Company to relocate him. The Company tried in good faith to secure a position commensurate with his physical abilities. When the job first secured was found to be beyond Doty's limitations the Union rejected the Company proposal of super-seniority. This is the same union which then processed the following grievance:
 
 
 23
 On June 17, 1980 Harold Doty was unjustly terminated because he was unable to perform his job duty, because of a back injury which occurred in the plant.
 
 
 24
 We would like Harold reinstated with all back pay and interest, with seniority & insurance.
 
 
 25
 The Company had discharged Doty on the stated ground, which are not contested that Doty was 'unable to perform available work to which his seniority entitled him to perform.' This discharge, then, occurred not because of Gates' unwillingness to accommodate Doty's disability, but because the union would not agree to work out any super-seniority arrangement for Doty's benefit. The grievance sought 'reinstatement,' but to what job at that time? As the arbitrator himself found, 'the parties agreed that there were simply no other available jobs which the Grievant would be entitled to perform based on his seniority and his job restrictions.' (Emphasis added).
 
 
 26
 The issue, then, was simply whether, under these circumstances, during June 1980, the Company discharged Doty 'for cause.' It could have laid him off for lack of work, or it could have discharged him as a matter of exclusive rights of management 'for cause' under the express and clear contract language. No one questions that management had the right to cut back the work force at the time and place involved.
 
 
 27
 The arbitrator looked to the following language of the seniority provisions: 'seniority will be considered broken for the following reasons: (a) when an employee is discharged for just cause.' (Emphasis added). This, in my view, was error, because the dispute did not involve Doty's seniority. The Company had, indeed, sought to protect his seniority and to give him super-seniority. Rather, the dispute before the arbitrator involved only that portion of the collective bargaining agreement involving the exclusive right of management to discharge for cause. Webster gives 'reason' as a synonym for 'cause.' It further defines cause as 'a ground of legal action.'[4] The arbitrator had to determine what was essentially uncontested--was there a reason, a ground for the Company's action under its management rights. He made the necessary finding:
 
 
 28
 In June of 1980 there was a very substantial general layoff which effectively eliminated the entire swing shift operation where the Grievant worked at the time. Consequently, the Grievant was required to give up his job as he did not have enough seniority to bump the employee who worked days in the utility classification.
 
 
 29
 Instead of reaching the obvious and only reasonable conclusion under the collective bargaining agreement after the above finding that the Company had a reason, a basis, a ground, or a 'cause' to discharge Doty under these circumstances, the arbitrator exceeded his authority and proceeded beyond the contract bounds to decide whether in his view it was fair or just for the Company so to act.
 
 
 30
 The basis for the arbitrator's improper decision is evident:
 
 
 31
 To the extent that an employee refuses to perform available work, such a remedy [discharge] may be proper. But where, as here, there is no evidence of a refusal, but rather a mere inability, then the proper remedy is layoff, rather than discharge.
 
 
 32
 Doty, he conceded, could not do any available work, not because he refused to do it, but because of his inability. Therefore, in the arbitrator's view of industrial justice, the Company should only lay Doty off, not discharge him. The arbitrator expressed his view of what was, in his view, reasonable or just:
 
 
 33
 [W]hile it is reasonable to terminate employees because they have over time become too sick to meet the reasonable requirements of employment, nevertheless it is unreasonable in a layoff situation to discharge otherwise satisfactory employees who happen to be physically unable to perform a job to which they could normally bump.
 
 
 34
 He then characterized the Company's action as 'overreaction', fashioning an 'overly restrictive rule', and 'cruelty.' He found, in short, that the Company had not proved to him a 'cause' that was 'just', and this was clearly in my opinion beyond the scope of the arbitrator's authority in the face of the clear applicable language of the contract. See Buckeye Cellulose v. District 65, Div. 19 UAW, 689 F.2d 629 (6th Cir. 1982) and Grand Rapids Die Casting Corp. v. Local Union #159, UAW, 684 F.2d 413 (6th Cir. 1982). I would therefore vacate the award of the arbitrator for making a decision that does not 'draw its essence from the collective bargaining agreement.' W. R. Grace & Co. v. Local 759, United Rubber Workers, 461 U.S. 757, 764 (1983).
 
 
 35
 Even if it were proper to construe 'cause' as 'just cause,' (a proposition I reject either by reason of some notion of waiver on the part of the Company, or otherwise), I would still set aside the arbitrator's decision in this case. No one knew at the time, June 1980, whether the 'very extensive general layoff' would be merely temporary or a more permanent reduction in force. The arbitrator evidently overlooked circumstances at the time of the discharge in question; instead, he saw that at a later time some of those laid off in June 1980, might be recalled. He then decided that in light of that hindsight view, it would be fairer or more reasonable, more 'just' that the Company lay off Doty instead of discharging him:
 
 
 36
 The record is not clear whether the Grievant's old job opened up in the recalls that took place a few months after his discharge or later. But if it did and if the Grievant's seniority was sufficient to be recalled, and if his seniority would have entitled him to his old job, I hold that he is entitled to back pay from that point on, assuming there were no layoffs thereafter.
 
 
 37
 Nowhere in the contract is there any implication that, if one is unavailable for any job by reason of disability despite the Company's conceded effort to locate a job, rather than by some other reason more within the employee's control, the Company must condition its right to terminate. Nowhere in the contract is it indicated, even by inference, that 'where there were simply no other available jobs' under seniority in the face of a general work force reduction, that one unavailable for work by disability rather than refusal, should be entitled to layoff status rather than discharge status. The holding of the arbitrator, then, even under a 'just cause' standard, is not based upon any reasonable construction of the terms of the contract but rather the arbitrator's view with the benefit of hindsight of what he perceived to be industrial justice. See General Drivers, Warehousemen & Helpers, Local Union #89 v. Hays & Nicoulin, Inc., 594 F.2d 1093 (6th Cir. 1979).
 
 
 38
 Again, I would vacate the order of the arbitrator with the recognition that the parties themselves, in light of subsequent developments, would acknowledge Doty's present position with Gates Rubber Company and decline, in equity and fairness, to disturb that current relationship.
 
 
 39
 (JA, at 83)
 
 
 
 [1]
 Article XIV, Section 5 reads:
 SECTION 5. Employees becoming disabled because of occupational injury or illness and employees having ten (10) or more years' seniority becoming physically disabled due to advanced age, will be given special consideration in job placement by the Company and the Union. It is realized that in order to provide work for people who come under this clause, it may be necessary at times for the Company and the Union to mutually agree upon granting super-seniority to these people for a specific period of time.
 (JA at 41)
 The dissent makes much of the fact that the union declined Gates' offer of superseniority for Doty and even goes so far as to suggest that the 'discharge, then, occurred because the union would not agree to work out any superseniority arrangement for Doty's benefit.' (at 2; emphasis supplied) This argument is a red-herring. There is no basis for drawing this negative inference from the union's refusal to agree to superseniority. Section 5 requires 'mutual' agreement and nowhere does the language of the contract require the union to accept such an arrangement which would have the effect of bumping another union member from shift one.
 
 
 [2]
 The dissent makes the remarkable statement that 'the only material section of the contract' in this case is that dealing with the 'Rights of Management.' This is a distortion of the issue in this case. Even Gates concedes that the issue presented to the arbitrator was whether Gates had 'cause' to discharge Doty under Article X, Section 6(a) ('Seniority') and the management rights provision of the contract. (Appellant's Brief, at 6-7)
 
 
 [3]
 Gates also argues that it has a past practice of discharging employees who were physically unable to perform their job. In the joint appendix at 89-106 is reproduced a copy of an arbitration award in which Gates' decision to discharge for this reason was upheld. The district court notes, however, that
 the grievants . . . were unable to perform any job in the plant, whereas Doty was able to perform at least one job which remained in the plant. Second, [Doty] . . . established a history of past practice upon which he was entitled to rely. [. . .] Furthermore, the extent to which an arbitrator must follow other arbitral decisions is a question for the arbitrator, in light of the contract and the history of the parties. [cites omitted]; [emphasis in original]
 
 
 [4]
 Webster's Third International Dictionary (1966). See also Black's Law Dictionary, 5th Ed.: defining 'cause' as 'a reason for an action or condition. A ground of legal action.'