INLAND CONTAINER
CORPORATION, Plaintiff,

v.

UNITED PAPERWORKERS INTERNATIONAL UNION and Local Nos. 628, 838 and 834, Defendants.

Civ. A. No. 84–385–1–MAC.

United States District Court,
M.D. Georgia,
Macon Division.

Jan. 28, 1987.

Mark Baxter, Thomas W. Talbot, Talbot & Ladson, Macon, Ga., for plaintiff; George J. Zazas & George H. Baker, Barnes & Thornburg, Indianapolis, Ind., of counsel.

J. Michael Walls, Marcia Fishman, Adair, Scanlon & McHugh, P.C., Atlanta, Ga., Mark M. Brooks, United Paperworkers Int. Union, Nashville, Tenn., for defendants.

## ORDER

FITZPATRICK, District Judge.

This is an action that was originally filed by an employer, Inland Container Corporation (Inland) under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185. In this action, Inland seeks to vacate an arbitration award rendered by arbitrator Donald Crane pursuant to the collective bargaining agreement between it and the defendant Unions. The defendants, United Paperworkers International and Local Nos. 628, 838 and 834 (defendant Unions) answered the complaint and counterclaimed seeking judicial enforcement of the award. On July 12, 1985, Inland filed a Motion for Summary Judgment. On August 16, 1985, the defendant unions responded and filed a Motion for Summary Judgment.

## MATERIAL AND UNDISPUTED MATTERS OF FACT

Inland and the defendant Unions are parties to a collective bargaining agreement. Pursuant to that agreement, grievances, including those protesting disciplinary actions against employees, may be submitted to binding arbitration. The agreement provides that Inland may discipline employees only for "proper cause."

On July 5, 1983 employee Billy Nobles ran an order of boxes designated as Order 5613-1. On that order the class stamp and location were printed on the bottom flap of the boxes instead of on the number 3 panel as was specified on the job ticket. Prior to running the order, Nobles sought and obtained the approval of his supervisor, Thelbert Harrison, to make the run of boxes with the class stamp and location on the bottom flap. Even though Nobles was given specific approval to make the run of boxes as he did, he received a three day suspension.

Pursuant to the agreement, the parties submitted a grievance to arbitrator Donald P. Crane protesting the three day suspension given by Inland to Mr. Nobles. The issue before the arbitrator was stipulated by the parties as follows:

Was the grievant, Billy J. Nobles, suspended for "proper cause" in accordance with the provisions of Article IX, Section I of the Collective Bargaining Agreement dated effective January 19, 1983, for setting up and running an order that was not in accordance with customer specifications on July 5, 1983.

The arbitrator determined that the suspension of Nobles was not for proper cause, and that his three day suspension was to be reduced to a written reprimand.

The basis for the arbitrator's award is set forth below:

> Even though the Company has the explicitly granted right to discipline employees for poor quality work under Section 2 of Article IX, and Mr. Nobles did, in fact, make an error in his area of responsibility, there are *several circumstances* in mitigation. And when they are considered, Mr. Nobles' suspension becomes improper. First, the operator does have a primary responsibility for the quality of his machine's output. Under normal circumstances, I would have sustained Mr. Nobles' suspension. But this is an unusual case. It seemed logical to vary from the specification because, as Mr. Nobles testified: "If I had put that (class stamp) in panel three the way the die was gotten up with your order number and your date, that would have been in panel two and you don't put your order number and dates in the panels. They go in the flaps". So he used his discretion to make what he considered to be an appropriate modification and supervisor Harrison gave his approval to make the run. This factor removes some of the blame from Mr. Nobles. Even the Company admitted that Supervisor Harrison also erred. Thus, there was a *shared* accountability in this particular case. And because there was no evidence that Mr. Harrison (or the Die Setter) was disciplined—and I agree with the Company that it is not the Arbitrator's purview to judge managerial discipline—the treatment of Mr. Nobles becomes disparate.
>
> Then, Article V refers to the Employer, the Union and employees as being responsible for quality. The parties in fashioning this clause obviously meant to have quality be a *joint* responsibility. No one person or group is responsible to the exclusion of others for quality. By the same token, the Agreement does not excuse any individual from his or her responsibility for quality. Thus, the clear intent of the Agreement is that operators have a primary responsibility for quality, but the Supervisor has at least an equal responsibility. And Supervisor Harrison contractually was obliged to insure that the order in question was run according to customer specifications. Both he and the operator were equally at fault in allowing the order to be run with the class stamp in a different location. By the rules of equitable treatment, both should have been treated the same. But Mr. Nobles lost three days and Supervisor Harrison was merely admonished.
>
> I do not want to leave the impression that I considered Mr. Nobles' "error" excusable. As operator, he does have a primary responsibility for the quality of output of his machine. And the Company is justified in disciplining him for failing to maintain standards. But the practice of requiring a Supervisor to authorize a run places a similar responsibility on him (the Supervisor). Essentially, each of these individuals have a *primary* responsibility for the outcome of the production run. The unique circumstances of this case, e.g., a logical change in the position of the class stamp, the Supervisor checked a printed box and approved it, and the Supervisor did not appear to have been suspended; cause me to judge the three-day suspension "not for proper cause". (Emphasis added)

## CONCLUSIONS OF LAW

■ An arbitrator's award is legitimate so long as it "draws its essence from the collective bargaining agreement." *Steel Workers v. Enterprise Wheel and Car Corporation*, 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960). A reviewing court has no authority to weigh the merits of the grievance and to substitute its own interpretation of the contract for the arbitrators. *Id.* at 598–99, 80 S.Ct. at 1361–62.

■ When analyzing a disciplinary action under a proper cause provision it is entirely appropriate for the arbitrator to consider all the circumstances. *Industrial Mut. Ass'n v. Amalgamated Workers*, 725 F.2d 406, 409–10 (6th Cir.1984). An arbitrator can properly consider mitigating factors to determine whether there is proper cause. *Id.* at 410. The Supreme Court

has made it clear that reviewing courts are not to vacate arbitration awards merely because an arbitrator's reasoning could be interpreted in several ways, one of which would lead to the conclusion that the award does not draw its essence from the contract. *Steel Workers v. Enterprise Wheel,* 363 U.S. at 598, 80 S.Ct. at 1361.

In this case the arbitrator looked to the totality of the circumstances, including the fact that a Supervisor who shared responsibility for the mistake was not disciplined, and determined that the three day suspension was not for "proper cause." This does not mean that the arbitrator found that "proper cause" required that the grievant and the supervisor be given identical discipline. This court interprets the award as stating that the fact that no discipline was given to the supervisor is evidence of the fact that Nobles' mistake lacked a sufficient degree of seriousness so as to warrant a suspension.

After considering all of the arguments made in the parties briefs, this court concludes that the award does draw its essence from the agreement and should be enforced. Accordingly, plaintiff's Motion for Summary Judgment is DENIED and defendant's Motion for Summary Judgment is GRANTED.