OPINION
TRAXLER, Circuit Judge.
Media General Operations, Incorporated, publisher of the Richmond Times-Dispatch newspaper, appeals from the district court’s refusal to vacate an arbitration award reinstating Pamela Mastropaolo, who had been terminated by Media General. Mastropaolo cross-appeals, challenging the district court’s denial of her request for attorney’s fees incurred in connection with her efforts to enforce the arbitration award. We affirm.
I.
Pamela Mastropaolo began working for Media General in 1974. During her employment, Mastropaolo was a member of the Richmond Newspapers Professional Association, which had entered into a collective bargaining agreement with Media General. The collective bargaining agreement provided that “[tjhere shall be no dismissals except for just and sufficient cause, which shall include but not be confined to: reduction of force, willful neglect of duty, gross misconduct and incompetency.” J.A. 300. The agreement also provided that, upon request, an employee “shall receive written notice from the employer stating the cause of his or her dismissal.” J.A. 300. The agreement did not define “gross misconduct.”
In February 1999, Mastropaolo attended the Mid-Atlantic Quilt Festival. Although she attended the event for purely personal reasons (that is, she was not assigned by the newspaper to write a story about the festival), she used her press identification to gain free admission to the weekend *129 festival. Mastropaolo began stealing quilting materials on the first day of the festival and continued the next day, stealing approximately $900 in fabric and other quilting supplies. She was caught by a vendor on the second day of the festival and was arrested. Mastropaolo was charged with two felony counts of larceny, and Media General suspended her without pay, in accordance with its policy regarding employees charged with felonies.
Mastropaolo hired an attorney to represent her on the criminal charges. The attorney recommended that Mastropaolo plead guilty to the charges and explained that there was a strong likelihood that the judge at sentencing would reduce the felony charges to misdemeanors. When Mas-tropaolo told Bill Millsaps, the newspaper’s executive editor, about her attorney’s recommendation, Millsaps told her that if she pleaded guilty to or was convicted of a felony, they “didn’t have anything to talk about. There’s nothing [he could] do.” J.A. 50. However, Millsaps told Mastro-paolo that if she pleaded guilty to or was convicted of a misdemeanor, “then [they] might have something to talk about.” J.A. 50.
Pursuant to a plea agreement, Mastro-paolo thereafter pleaded guilty to one misdemeanor count of petit larceny and one felony count of grand larceny. The agreement reserved to Mastropaolo the right to request that the trial court amend the remaining felony charge to a misdemeanor charge. At the subsequent sentencing proceeding, the judge reduced the felony count to a misdemeanor, and Mastropaolo was formally found to be guilty of two misdemeanor petit larceny charges.
On June 1, 1999, after Mastropaolo pleaded guilty but before the felony charge was reduced by the trial judge, Media General terminated Mastropaolo. The company sent Mastropaolo a letter notifying her of its action, stating that she was being terminated “because of [her] guilty plea to a felony charge.” J.A. 312. The initial draft of the letter specified Mastro-paolo’s misconduct at the festival as a reason for her termination, but the letter was revised to give only the felony guilty plea as the basis for the termination. Before terminating Mastropaolo, Media General had contacted the prosecutor in charge of Mastropaolo’s case and learned that Mas-tropaolo had pleaded guilty to a felony and a misdemeanor charge and that it was possible the felony charge could be reduced at the upcoming sentencing hearing.
On June 2, Mastropaolo’s criminal attorney sent Media General a letter stating that the “case is not over yet” and that “there is a better than even chance” that the judge would allow the felony plea to be amended to a misdemeanor plea. J.A. 322. The attorney asked that the company reconsider its termination decision and at least wait until the July 29 final court date. Media General refused to reconsider the termination.
The union filed a formal grievance on Mastropaolo’s behalf. Media General denied the grievance, and the matter proceeded to arbitration, in accordance with the terms of the collective bargaining agreement. The arbitrator ruled in favor of Mastropaolo and ordered her to be reinstated after serving a 30-day suspension without pay.
Media General then commenced this action, asking the district court to vacate the arbitration award because it was inconsistent with the terms of the collective bargaining agreement. For her part, Mas-tropaolo requested that the district court enforce the arbitration award, and she also sought an award of attorney’s fees incurred in connection with her enforcement action. The district court refused to vacate the award and granted summary *130 judgment in favor of Mastropaolo on her enforcement action. The court, however, denied Mastropaolo’s request for attorney’s fees. These appeals followed.
II.
A.
The Labor Management Relations Act gives federal courts the authority to review arbitration awards in labor disputes. See 29 U.S.C.A. § 185 (West 1998); District 17, United Mine Workers of America v. Island Creek Coal Co., 179 F.3d 133, 136-37 (4th Cir.1999). However, if reviewing courts were free “to delve into the merits of an arbitration award, then the federal policy of settling labor disputes by arbitration would be seriously undermined. Such judicial second-guessing would transform a binding process into a purely advisory one, and ultimately impair the value of arbitration for labor and management alike.” United States Postal Serv. v. American Postal Workers Union, 204 F.3d 523, 527 (4th Cir.2000) (citations, internal quotation marks, and alteration omitted); see also United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) (“The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards.”). The scope of judicial review of arbitration awards, therefore, is “among the narrowest known to the law.” Union Pac. R.R. v. Sheehan, 439 U.S. 89, 91, 99 S.Ct. 399, 58 L.Ed.2d 354 (1978) (per curiam) (internal quotation marks omitted).
A court reviewing a labor arbitration award is limited to “determining] only whether the arbitrator did his job— not whether he did it well, correctly, or reasonably, but simply whether he did it.” Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int’l Union, 76 F.3d 606, 608 (4th Cir.1996). In doing his job, the arbitrator “is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice.... [H]is award is legitimate only so long as it draws its essence from the collective bargaining agreement.” Enterprise Wheel, 363 U.S. at 597, 80 S.Ct. 1358. Thus, “as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.” United Paperworkers Int’l Union v. Misco, Inc., 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) (emphasis added). While an award that ignores the plain language of the collective bargaining agreement cannot be said to draw its essence from that agreement, see Mountaineer Gas, 76 F.3d at 608, “a court should not reject an award on the ground that the arbitrator misread the contract,” Misco, 484 U.S. at 38, 108 S.Ct. 364.
B.
Media General contends that the arbitration award in this case did not draw its essence from the collective bargaining agreement. Media General’s primary argument is that the arbitrator concluded (either explicitly or implicitly) that Mastropaolo’s conduct amounted to gross misconduct, but the arbitrator, apparently swayed by personal sympathy for Mastropaolo, nonetheless refused to uphold the termination. Because the collective bargaining agreement expressly provides that gross misconduct shall constitute just and sufficient cause for discharge, Media General contends that the arbitrator violated the plain language of the collective bargaining agreement when he refused to uphold the termination. See, e.g., Moun *131 taineer Gas, 76 F.3d at 610 (vacating arbitration award because “the arbitrator blatantly ignored the unambiguous language of the [collective bargaining agreement] and fashioned a modified penalty that appealed to his own notions of right and wrong”); Delta Queen Steamboat Co. v. District 2 Marine Eng’rs Beneficial Ass’n, 889 F.2d 599, 604 (5th Cir.1989) (“If a collective bargaining agreement defines ‘proper cause’ to include a non-exhaustive list of offenses, an arbitrator cannot ignore the natural consequence of his finding that a listed offense was committed.”).
As the district court explained, the opinion issued by the arbitrator in this case is “not a model of clarity.” J.A. 545. The opinion is susceptible of the construction urged by Media General — that the arbitrator concluded that Mastropaolo’s conduct amounted to gross misconduct, but still refused to uphold the termination. As noted above, Media General insists that such a construction of the opinion requires that the award be vacated. Mastropaolo, however, contends that such a construction would not preclude enforcement of the award. See, e.g., Misco, 484 U.S. at 41, 108 S.Ct. 364 (“Normally, an arbitrator is authorized to disagree with the sanction imposed for employee misconduct.”); Enterprise Wheel, 363 U.S. at 597, 80 S.Ct. 1358 (“When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies.”).
We need, not, however, decide whether it would have been proper for the arbitrator to order reinstatement if the arbitrator concluded that Mastropaolo’s actions amounted to gross misconduct. As we explain below, the arbitration opinion reasonably may be read in a way that shows the award drew its essence from the collective bargaining agreement. And because the award may be so read, we must reject the reading urged by Media General. See Enterprise Wheel, 363 U.S. at 598, 80 S.Ct. 1358 (“A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award.”); ANR Advance Transp. Co. v. International Bhd. of Teamsters, 153 F.3d 774, 778 (7th Cir.1998) (‘We resolve any reasonable doubt about whether an award draws its essence from the collective bargaining agreement in favor of enforcing the award.” (internal quotation marks and alteration omitted)); Industrial Mut. Ass’n v. Amalgamated Workers, Local Union No. 383, 725 F.2d 406, 410 (6th Cir.1984) (“The Supreme Court has made it clear ... that reviewing courts are not to vacate awards merely because an arbitrator’s reasoning could be interpreted in several ways, one of which would lead to the conclusion that the award does not draw its essence from the contract.”).
In his order, the arbitrator stated that “[o]ne of the most important tenets of disciplinary proceedings is that the Arbitrator must look to the charge stated by the Company at the time it acted to discharge, and that there can be no significant additions or cha[n]ges to the accusation which was said by it to be why it acted as it did.” J.A. 407-08. The arbitrator then discussed the significance of Media General’s June 1 letter to Mastropaolo (which explained that she had been terminated because she pleaded guilty to a felony) in light of the requirement in the collective bargaining agreement that Media General inform employees of the reason for dismissal. The arbitrator found it significant that Media General had deleted from the first draft of the June 1 letter *132 any reference to Mastropaolo’s conduct at the festival and had made a specific decision to rely solely on the felony guilty plea to justify the discharge, noting that “the narrow charge was [not] the result of a mistake or other sloppy arrangements.” J.A. 408. The arbitrator therefore refused to consider Media General’s claims that it fired Mastropaolo because of the serious nature of her conduct, regardless of whether the crime to which she pled was treated as a felony or a misdemeanor, concluding “that would inject reasons for the discharge that were not stated at the time it was imposed.” J.A. 411.
The arbitrator concluded that while the statement in the letter that Mastropaolo pleaded guilty to a felony was “formally accurate,” the statement “in reality [was] not substantially descriptive of all that happened here,” J.A. 411, given that the felony charge was later reduced to a misdemeanor. As the arbitrator explained, Media General made its decision to terminate Mastropaolo “almost two months before [Mastropaolo’s] ultimate conviction of the reduced counts of two misdemeanors and not of a felony and before the criminal process had ended.” J.A. 408. Thus, the arbitrator determined that whether or not the underlying conduct could be considered gross misconduct was irrelevant; instead, the only question the arbitrator considered was whether pleading guilty to a felony (the reason given in the letter) was just and sufficient cause for Mastropaolo’s termination.
The arbitrator concluded that the “just and sufficient cause” language used in the collective bargaining agreement must be interpreted to mean more than “just cause.” That is, the arbitrator determined that by including “sufficient” in the agreement,
[t]he parties simply must have had some thought that they would impose some greater duty on the Company than if the parties’ negotiated Agreement said only that there must be “just cause.” The phrase “and sufficient” thus must be seen here as imposing a heavier burden on Management than would a mere “just cause” standard. The best the Arbitrator can do, therefore, is to read “and sufficient” as adding a requirement that the “just cause” be weighty, grave, and serious, to some degree at least over what would be included in “just cause,” standing alone.
J.A. 410.
As we read the opinion, the arbitrator concluded that pleading guilty to a felony was not just and sufficient cause, at least in this case. Given the executive editor’s statement that Mastropaolo might not lose her job if she pleaded guilty to a misdemeanor, and the company’s sole reliance on the felony guilty plea when it explained why she was terminated, the arbitrator concluded that Mastropaolo’s guilty plea to a charge that was only briefly a felony was not just and sufficient cause, since the felony charge was reduced to a misdemeanor charge shortly after the guilty plea, an outcome that Media General knew was possible when it fired her. Thus, even if stealing and misusing a press pass should be considered gross misconduct under the collective bargaining agreement, that would not justify Mastropaolo’s termination, since Media General stated it fired her because she pleaded gufity to a felony, not because of the nature of the underlying conduct.
The arbitration award, therefore, flowed from the arbitrator’s interpretation of two provisions of the collective bargaining agreement — the requirement that Media General give notice of its reason for termination and the requirement that the termination requires just and sufficient cause. While we might not agree with the arbitra *133 tor’s interpretation of these provisions, the interpretation is rational and plausible, in that it attempts to give effect to every term of the agreement. See Bruce Hardwood Floors v. UBC, Southern Council of Indus. Workers, 108 F.3d 449, 451-52 (5th Cir.1997) (“In applying the essence test, we have stated that an arbitration award must have a basis that is at least rationally inferable, if not obviously drawn, from the letter or purpose of the collective bargaining agreement. The award must, in some logical way, be derived from the wording or purpose of the contract.” (internal quotation marks and alterations omitted)).
To be sure, the arbitrator determined that the termination was not justified, at least in part, by considering certain mitigating factors, such as Mastropaolo’s length of service with the newspaper and the arbitrator’s belief that Mastropaolo would not engage in similar conduct again. But the arbitrator’s construction of the collective bargaining agreement made irrelevant the question of whether stealing is gross misconduct per se, and instead required the arbitrator to determine whether the reason given by Media General for the termination amounted to just and sufficient cause. Nothing in the collective bargaining agreement rendered improper the arbitrator’s consideration of such mitigating factors when answering what the arbitrator viewed as the disposi-tive question — whether pleading “guilty to a preliminary charge of felony, later reduced to a misdemeanor, constitutes just and sufficient cause for [Mastropaolo’s] discharge.” J.A. 413.
Because the arbitration award reasonably can be interpreted in a way that draws its essence from the collective bargaining agreement, we must accept that interpretation of the award over that urged by Media General.* See Enterprise Wheel, 363 U.S. at 597, 80 S.Ct. 1358; ANR Advance Transp. Co., 153 F.3d at 778. Therefore, even if the arbitrator’s interpretation of the agreement was wrong, we must defer to it. See Misco, 484 U.S. at 38, 108 S.Ct. 364 (“[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.”); Upshur Coals Corp. v. United Mine Workers, 933 F.2d 225, 230 (4th Cir.1991) (“We do not and need not decide whether any of these analyses constitute the best or most accurate reading of the contract. We hold only that they are plausible readings of the agreement.... Consequently, under our deferential standard of review, we cannot say that the arbitration award failed to draw its essence from the agreement.”).
III.
In her cross-appeal, Mastropaolo contends that the district court erred by denying her request for an award of attorney’s fees incurred in her action to enforce the arbitration award. We disagree.
Although an award of attorney’s fees is not specifically authorized by the Labor Management Relations Act, fees may be awarded against a party who unjustifiably refuses to abide by an arbitrator’s award. See United Food & Commercial Workers v. Marval Poultry Co., 876 F.2d 346, 350 (4th Cir.1989). ‘Where a challenge goes to the fundamental issues of arbitrability or of whether an arbitra *134 tion award draws its essence from the contract, the standard for assessing its justification is ... whether it has any arguable basis in law.” Id. at 351 (internal quotation marks omitted). Under this standard, such a challenge is justified unless it “literally [has] no reasonably arguable legal support.” Id.
We agree with the district court that Media General’s challenge went to the question of whether the arbitration award drew its essence from the collective bargaining agreement, and that, in view of the “confusing language used in the arbitrator’s opinion, it cannot be said that Media General’s action literally had no legal support.” J.A. 552 (internal quotation marks and alteration omitted). Accordingly, Media General’s challenge to the award was sufficiently justified, and Mastropáolo’s request for attorney’s fees was properly denied. Cf. Westvaco Corp. v. United Paper-workers Int’l Union, 171 F.3d 971, 978 n. 3 (4th Cir.1999) (concluding that arbitration award should be enforced, but denying employee’s request for attorney’s fees because the employer “did not challenge the arbitration award ‘without justification’ ”).
IV.
If this court were deciding the propriety of Media General’s termination of Mastro-paolo in the first instance, we likely would have interpreted the collective bargaining agreement quite differently than did the arbitrator, and we likely would have concluded that Mastropaolo’s conduct amounted to gross misconduct warranting discharge. But this court is not free “to delve into the merits of an arbitration award,” American Postal Workers Union, 204 F.3d at 527, and we may not refuse to enforce an arbitration award simply because we believe the arbitrator’s decision was wrong, see Misco, 484 U.S. at 38, 108 S.Ct. 364 (“[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.”). Under the highly deferential standard of review applicable in this case, we are constrained to conclude that the arbitrator’s award drew its essence from the collective bargaining agreement and that the award must therefore be enforced. But because Media General’s challenge to the award was sufficiently justified, Mastropaolo is not entitled to an award of attorney’s fees. Accordingly, the decision of the district court is hereby affirmed.

AFFIRMED.

 This conclusion makes it unnecessary to consider Media General’s alternative argument that if the arbitrator did not find Mastropao-lo’s conduct to be gross misconduct, then that failure was "clear arbitral error” that requires vacating of the arbitration award. Brief of Appellant at 33.