ZADY NATEY, INC.

v.

**UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION, LOCAL NO. 27.**

Civ. No. JFM–91–3242.

United States District Court, D. Maryland.

June 30, 1992.

---

John W. Kyle, Warren M. Davison, Littler, Mendelson, Fastiff & Tichy, Baltimore, MD, for plaintiff.

Joel A. Smith, Abato, Rubenstein & Abato, P.A., Lutherville, MD, for defendant.

## OPINION

MOTZ, District Judge.

Zady Natey, Inc. seeks to vacate an arbitration award entered in favor of United Food and Commercial Workers International Union, Local No. 27 (the "Union") and against it. At issue is whether Zady Natey, as the seller of the assets of a business, is liable under a successors and assigns clause in a collective bargaining agreement for damages caused by the failure of the purchaser to assume Zady Natey's obligations under the agreement. Zady Natey and the Union have each moved for summary judgment.

### I.

Nathan Mash was the owner of Mash's, Inc. ("old Mash's"), a Maryland corporation engaged in the business of marketing dressed hams, corned beef and other meat products at sites in Baltimore and Landover, Maryland. The Union represented production workers at the Landover facility since early 1970. Over the years, old Mash's and the Union entered into a series of collective bargaining agreements. The latest of those agreements ("the Agreement") became effective April 10, 1985 and expired December 31, 1987. Section 13 of the Agreement provided: "This Agreement shall be binding upon the parties hereto, their heirs, executors, administrators, successors and assigns."

On July 17, 1987, approximately five months prior to the Agreement's expiration, Nathan Mash sold the assets of old Mash's to a group of investors headed by Terrance Conway for approximately $10,000,000. Approximately twelve draft agreements were exchanged between old Mash's and Conway. Originally, the parties contemplated a stock purchase agreement but decided on an assets purchase agreement for tax reasons. Conway refused to indemnify old Mash's for consequences of the sale concerning its employees and insisted on the secrecy of the assets sale prior to closing.

Under the terms of the asset purchase agreement, old Mash's agreed that as conditions precedent to the closing of sale, it would cease operations, notify its employees that their employment with old Mash's was terminated and change its name to Zady Natey, Inc. At closing Conway assumed control of the assets of old Mash's, including its corporate name ("new Mash's"). He immediately notified the existing employees that the new corporation would be reopening the Landover facility at a later time, under new terms and conditions of employment, and that employees were free to apply for work under the new management.[1]

On July 21, 1987, the Union wrote to Zady Natey, informing it that the assets sale violated section 13 of the Agreement because it had failed to obtain new Mash's agreement to continue the terms of the Agreement through its expiration. Zady Natey denied that sec-

---

1. In fact, only 39 of the 138 old Mash's eligible employees on the payroll as of July 17, 1987 were ultimately hired by new Mash's. The Union filed two unfair labor charges against new Mash's, alleging that it had discriminatorily refused to hire former production employees of old Mash's because of their union membership. These charges (to which Zady Natey was not a party) were settled before the legal issues which they raised were decided.

tion 13 imposed such an obligation or that the grievance was arbitrable. The arbitrability question was litigated in this Court and was resolved in favor of the Union. *See United Food and Commercial Workers Int'l Union, Local 27 v. Zady Natey, Inc., et al.,* Civ. No. PN–87–1956 (1987). On October 25, 1988, an arbitration hearing was held, and on July 13, 1989, the arbitrator issued his award in favor of the Union. This action followed.[2]

## II.

■ In the *Steelworkers trilogy,* the Supreme Court made clear that courts play an extremely limited role when asked to review the decision of an arbitrator. *United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). More recently, in *Misco, Inc.,* the Supreme Court reaffirmed the narrowness of this review:

> The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract.
>
> ... [A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.

*United Paperworkers Int'l Union, AFL–CIO, et al. v. Misco, Inc.,* 484 U.S. 29, 38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987); *see also Roy Stone Transfer Corp. v. Local 22, Teamsters,* 752 F.2d 949, 951 (4th Cir.1985) (award affirmed because no evidence in record that arbitrator "totally incorrect" in in-

terpretation and application of the collective bargaining agreement).

Nevertheless, a court's deference does not completely insulate arbitral awards from judicial review. While an arbitrator is free to interpret ambiguous provisions in a collective bargaining agreement, he may not ignore its plain language. *Ficks Reed Co. v. Local 112 Int'l Union, Allied Indus. Workers of America,* 771 F.Supp. 208, 211, 214 (S.D.Ohio 1991); *accord Sears, Roebuck and Co. v. Teamsters Local Union No. 243,* 683 F.2d 154, 155 (6th Cir.1982), *cert. denied* 460 U.S. 1023, 103 S.Ct. 1274, 75 L.Ed.2d 495 (1983); *Inter–City Gas Corp. v. Boise Cascade Corp.,* 845 F.2d 184, 187 (8th Cir.1988) (arbitrator amends or alters agreement if interprets unambiguous language in way different from plain meaning). The test is whether "the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice.' " *Misco, Inc.,* 484 U.S. at 36, 108 S.Ct. at 370 (*quoting Enterprise Wheel & Car Corp.,* 363 U.S. at 596, 80 S.Ct. at 1360).

## III.

■ In rendering his decision in favor of the Union, the arbitrator found, in part, that new Mash's was a successor to old Mash's within the meaning of section 13 of the collective bargaining agreement. Zady Natey challenges this finding, contending that the term "successor" has a single meaning under labor law, and that new Mash's was not a successor within the meaning of the collective bargaining agreement because it did not hire a majority of old Mash's employees.[3]

It is true, as Zady Natey posits, that the Supreme Court has held that for the purpose of determining whether a purchaser of the assets of a business may be required to bargain under a collective bargaining agree-

2. The reason for the delay in the filing of this action was that a second arbitration hearing on the issue of damages was conducted, and the arbitrator issued his award in that proceeding on October 28, 1991. No appeal has been taken from his damages determination.

3. Although the parties have focused upon the question of whether new Mash's is a successor under section 13 of the collective bargaining

agreement, that question itself is legally immaterial. Rather, what needs to be determined, as the first step of analysis, is the somewhat broader question of what "successor" means within the intendment of section 13. However, since the two questions merge, and to answer the former answers the latter, I will address the issue as framed by the parties.

ment entered into by the seller, he is deemed to be a "successor" only if, in continuing the operation of the business, he hires a majority of the seller's employees. *See Fall River Dyeing & Finishing Corp. v. NLRB,* 482 U.S. 27, 107 S.Ct. 2225, 96 L.Ed.2d 22 (1987). However, the Supreme Court has also stated (in language which it has not repudiated in *Fall River Dyeing* or elsewhere) that "[t]here is, and can be, no single definition of 'successor' which is applicable in every legal context. A new employer, in other words, may be a successor for some purposes and not for others." *Howard Johnson Co. v. Detroit Local Joint Executive Board,* 417 U.S. 249, 263 n. 9, 94 S.Ct. 2236, 2243 n. 9, 41 L.Ed.2d 46 (1974).[4]

Thus, the initial question here presented is whether the arbitrator ignored the plain language of the collective bargaining agreement in finding that new Mash's is a "successor" within the meaning of the agreement even though it was not a "successor" within the meaning of *Fall River Dyeing.* Four facts demonstrate that he did not do so. First, *Fall River Dyeing* had not even been decided when the collective bargaining agreement between old Mash's and the Union was first negotiated. Second, no other provision in the agreement suggests that the parties were intending to use the term "successor" only in the extremely limited sense by which it is defined for the purpose of determining a purchaser's obligations under a collective bargaining agreement.[5] Third, section 13

also refers to "heirs, executors administrators and assigns," evidencing that the parties intended that the section should be construed generically, *i.e.* to apply to all persons who followed in the footsteps of old Mash's. Fourth, Harry Adelberg, the attorney who represented Nathan Mash when the collective bargaining agreement was originally negotiated, testified at the arbitration hearing (on behalf of Zady Natey) that the successors and assigns clause—which had been proposed by the Union—appeared to be completely innocuous as far as he [Mr. Mash] was concerned since "there was no contemplation of any change or successors being involved unless he died." This too suggests that the parties were using the "heirs, executives administrators, successors and assigns" language in a generic, not a restricted, sense.

Under these circumstances the term "successor" was, at most, ambiguous, and the arbitrator acted well within his authority in interpreting it as applying to anyone who followed old Mash's, whether or not he was a "successor" within the meaning of *Fall River Dyeing.* Therefore, under section 13 (as permissibly construed by the arbitrator) old Mash's agreed that anyone who might purchase its stock or assets or otherwise succeed it would be bound by the agreement whether or not he would be bound to the agreement as a matter of labor law. By entering into that agreement old Mash's could not, of course, bind the purchaser itself. *See, e.g.,*

---

4. Although it is not self-evident from the quoted language itself, it is clear from its surrounding context that when the Court said "in every legal context," it meant "every legal context" within labor law, not labor law as a "legal context" different from some other substantive area of the law.

5. The arbitrator found, and the Union argues, that if the successors and assigns clause were interpreted as referring merely to a successor within the meaning of *Fall River Dyeing,* the clause would be mere surplusage. This would be an additional reason for upholding a broader reading of the clause. *See generally* 1 Bornstein & Gosline, *Labor and Employment Arbitration* 14.02[1][d] (1992). Zady Natey argues that this is not so because in the early 1970s when the collective bargaining agreement was first negotiated, a successors clause could be held to bind a purchaser to a collective bargaining agreement. *See, e.g., Burns Int'l Detective Agency, Inc.,* 182

N.L.R.B. 348 (1970), *enforced in part,* 441 F.2d 911 (2d Cir.1971) *aff'd as modified,* 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972). Moreover, according to Zady Natey, even after the Supreme Court reversed the NLRB's ruling in *Burns, NLRB v. Burns Int'l Security Service, Inc.,* 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972), and even after *Howard Johnson Co. v. Detroit Local Joint Executive Board, supra,* was decided, a successors clause was relevant in determining whether a purchaser could be forced to go to arbitration. *See, e.g., Bartenders & Culinary Workers Union v. Howard Johnson Co.,* 535 F.2d 1160, 1162 (9th Cir.1976); *Local 1115 Joint Board Nursing Home Employees v. B & K Investments, Inc.,* 436 F.Supp. 1203 (S.D.Fla.1977). There seems to be merit in Zady Natey's argument. However, I need not decide the issue since my affirmance of the arbitrator's decision does not turn upon whether Zady Natey's reading of section 13 would render it meaningless.

*Howard Johnson Co. v. Detroit Local Joint Executive Board,* 417 U.S. at 258 n. 3, 94 S.Ct. at 2241 n. 3. However, the question presented here is not whether new Mash's, as purchaser, was bound by the collective bargaining agreement but whether Zady Natey, as the seller, was under a contractual obligation which it breached.[6]

The Union contends that section 13 may be permissibly interpreted as imposing an affirmative obligation upon Zady Natey to find a successor who was willing to assume Zady Natey's obligations under the collective bargaining agreement. There is some authority to support this view. *See, e.g., Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union, AFL–CIO v. Owens–Illinois, Inc.,* 758 F.Supp. 962 (D.N.J.1991); *Boardman Co. v. United Steelworkers of America,* 91 Lab.Arb. (BNA) 489 (1988) (Harr, Arb.); *see also Association of Flight Attendants, AFL–CIO v. Delta Air Lines, Inc.,* 879 F.2d 906 (D.C.Cir.1989), *cert. denied,* 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 783 (1990) (holding that the meaning of the successors and assigns clause was arbitrable). There is, however, other authority to the contrary. *See e.g., Wyatt Mfg. Co.,* 82 Lab.Arb. (BNA) 153 (1983) (Goodman, Arb.); *National Tea Co.,* 59 Lab.Arb. (BNA) 1193, 1997–98 (1972) (Joseph, Arb.). The law of the Fourth Circuit is not entirely clear. While in a mining operation case the Court ruled in favor of a union bringing suit against the seller for failure to find a purchaser willing to continue the collective bargaining agreement, it did so only in the face of express language in the applicable agreement providing that the mining operation "shall not be sold, conveyed, or otherwise transferred or assigned to any successor without first securing the agreement of the successor to assume the Employer's obligations under this Agreement." *Dist. 17,*

*Dist. 29, Local Union 7113, & Local Union 6023, UMWA v. Allied Corp.,* 765 F.2d 412, 417 (4th Cir.), *cert. denied,* 473 U.S. 905, 105 S.Ct. 3527, 87 L.Ed.2d 652 (1985); *accord, Int'l Union, UMWA v. Eastover Mining Co.,* 603 F.Supp. 1038, 1040, 1044–45 (W.D.Va. 1985).

I would be hesitant to uphold an arbitrator's interpretation of a collective bargaining agreement inferring from a bare successors and assigns clause an affirmative obligation to find a purchaser who will continue the collective bargaining agreement. Such an obligation is an extraordinary one which mere silence would not seem to imply. Here, however, Zady Natey did not simply fail affirmatively to find a purchaser who would continue its agreement with the Union. Rather, in order to maximize the price which Nathan Mash received for the sale of its assets, Zady Natey took affirmative steps, prior to the consummation of the sale and while it was still bound by the collective bargaining agreement, to make it impossible for the successors and assigns clause to be performed. Specifically, as a condition of the sale, it discharged all of its employees before the sale was closed for the very purpose of assuring that new Mash's would not be bound by the collective bargaining agreement despite section 13's mandate to the contrary. It also agreed to keep the proposed sale secret, thereby precluding the Union from attempting to obtain an injunction against its consummation.

■ These facts fully substantiate a finding that Zady Natey breached a duty of good faith and fair dealing which was part of its obligation under the collective bargaining agreement. *See generally* Restatement of Contracts (Second), §§ 205 & 245.[7] The ar-

---

6. I note that almost all of the cases which the parties have cited both before the arbitrator and in this court have concerned the question of the liability of the purported successor under the collective bargaining agreement. *Howard Johnson* itself addressed that question. However, it is also noteworthy that in *Howard Johnson* the sellers "admitted that they were required to arbitrate in accordance with the terms of the collective-bargaining agreements they had signed." 417 U.S. at 253, 94 S.Ct. at 2239.

7. Zady Natey argues that the principles set forth in the Restatement prohibiting a party from taking steps to render impossible the performance of a provision of a contract into which it has entered should not be incorporated into labor law. It has cited no authority in support of its position, and reason certainly does not substantiate it. Indeed, the interest of preserving stability in labor relations supports rather than undercuts the implication of a duty requiring a party to refrain from acting in bad faith.

bitrator did not articulate his ruling in precisely that fashion. Instead, offended by what he perceived as Zady Natey's and Mash's bad faith, he railed against their conduct in somewhat vehement, rather than coolly analytical, language. That fact alone, however, provides no basis for overturning the arbitrator's award. *See, e.g., Enterprise Wheel & Car Corp.*, 363 U.S. at 598, 80 S.Ct. at 1361. The gravamen of his ruling was on the mark, and his interpretation of the collective bargaining agreement—as prohibiting Zady Natey from becoming an accomplice in the frustration of the performance of section 13—was derived from its essence.

A separate order effecting the rulings made in this opinion is being entered.

## ORDER

For the reasons stated in the opinion entered herein, it is this 30th day of June 1992

ORDERED

1. Plaintiff's motion for summary judgment and motion that the arbitrator's award be vacated are denied;

2. Defendant's motion for summary judgment and motion for enforcement of the arbitrator's award are granted; and

3. Judgment is entered in favor of defendant against plaintiff.

Two other arguments advanced by Zady Natey are equally without merit. First, it contends that old Mash's was entitled to discharge its employees prior to the closing of the sale under section 1B of the collective bargaining agreement which reserved to it the right "to relieve employees from duty because of lack of work or other legitimate reason, subject only to such limitations are provided in this Agreement." The arbitrator certainly was not obligated to conclude that discharging employees for the purpose of avoiding the successors and assigns clause was a "legitimate reason" within the meaning of this section. Second, Zady Natey hypothesizes that it could have sold the assets without first discussing with Terrance Conway any union related matters and that Conway could have discharged the employees immediately after the closing of the sale without being bound by the collective bargaining agreement. That is entirely true. However, it does not follow, as Zady Natey argues, that this justifies the contrary action which Zady Natey and Nathan Mash in fact took. They did discuss labor matters with Conway prior to the closing (because Conway wanted to assure that he would not inherit the collective bargaining agreement), and they derived the benefit of their bargain in having done so. In short, Zady Natey and Nathan Mash made a choice not to actualize their own hypothetical, and it is incumbent upon them to live with the consequences of their decision.