**ZADY NATEY, INCORPORATED,**
**Plaintiff–Appellant,**

**v.**

**UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION, LOCAL NO. 27, Defendant–Appellee.**

No. 92–1895.

United States Court of Appeals, Fourth Circuit.

Argued March 1, 1993.

Decided June 1, 1993.

Warren Malcolm Davison, argued (John W. Kyle, on brief), Littler, Mendelson, Fastiff & Tichy, Baltimore, MD, for plaintiff-appellant.

Joel Allen Smith, Kahn, Smith & Collins, P.A., Baltimore, MD, argued for defendant-appellee.

Before PHILLIPS and MURNAGHAN, Circuit Judges, and HILL, Senior Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.

**OPINION**

MURNAGHAN, Circuit Judge:

Zady Natey, Inc. challenges an order of the district court affirming an arbitration award in favor of the United Food and Commercial Workers International Union, Local 27. The arbitrator ruled that Zady Natey, as the seller of the assets of a business, Mash's Inc.,[1] was liable under an extant "successors

---

**1.** Mash's Inc. thereupon changed its name to Zady Natey, Inc., allowing the purchaser to obtain the business' name.

and assigns" clause [2] in a collective bargaining agreement for damages caused by the failure of the purchaser to assume Zady Natey's obligations to its employees for the duration of the agreement. In granting the Union's motion for summary judgment and entering an order enforcing the arbitrator's award, the district court found that Zady Natey had certain obligations as a result of its agreement with the Union and that it had taken "affirmative steps, prior to the consummation of the sale and while it was still bound by the collective bargaining agreement, to make it impossible for the successors and assigns clause to be performed." 826 F.Supp. 142. Zady Natey was deemed responsible to satisfy those obligations. Zady Natey has appealed.

Zady Natey has cast its appeal around a decision of the Supreme Court holding that, in the context of an issue over obligation to bargain, a *purchaser* of assets, though a successor or assign, was not responsible for substantive provisions of its predecessor's collective bargaining agreement unless it also hired a majority of its predecessor's employees. *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 107 S.Ct. 2225, 96 L.Ed.2d 22 (1987). We have here in the instant case, of course, a fact specific decision, dependent on what the parties (a *seller* and the Union) intended when the words "successors and assigns" were agreed upon and actually used in an agreement clearly in force. We must ask what duties attached to the seller as a result of entering such an agreement.

The arbitrator interpreted the successors and assigns clause as extending to the description of, though not the obligations of, the purchaser of Mash's Inc.'s assets. Therefore, when the purchaser of Mash's assets refused to be bound, the arbitrator found the term to cause liability on the part of Zady Natey (the changed name of Mash's Inc.) which had by contract promised that successors and assigns would carry out the collective bargaining agreement terms. The collective bargaining agreement, from 1970 for-

ward until expiration on December 21, 1987, a date about six months after the sale of Mash's Inc.'s assets, uniformly contained language making it applicable to Mash's Inc., its successors and assigns.

In the negotiations which brought about the sale, a stock purchase was considered, but ultimately, for tax reasons, the purchaser insisted on, and achieved, an assets purchase agreement. The purchaser refused to indemnify Mash's Inc. for consequences of the sale concerning its employees and insisted on the secrecy of the assets sale prior to closing. As a condition precedent to the closing of the sale, Mash's Inc. agreed to cease operations, fire its employees, and change its name to Zady Natey, Inc. After closing, the new owners later reopened the facility and re-hired a small number of Mash's previous employees. Since not all of the terms of the collective bargaining agreement were adopted by or complied with by the purchaser of Mash's assets, including its name, the Union representing the employees asserted a claim against Zady Natey. An arbitration ensued which the Union won.

The arbitrator specifically rejected Zady Natey's view that only a successor as described in *Fall River Dyeing, supra*, could be a successor under the collective bargaining agreement. Zady Natey appealed to the district court for the District of Maryland.

Upon review of cross-motions for summary judgment, the district judge granted summary judgment in favor of the Union and against Zady Natey. It first determined that the arbitrator did not ignore the language of the collective bargaining agreement when he found that the purchaser of assets was a successor. The court further determined that Zady Natey took affirmative steps to frustrate the performance of the successors and assigns language.

The district court, in granting summary judgment in favor of the Union, determined that the arbitrator did not "ignore[ ] the plain language of the collective bargaining agreement in finding that new Mash's [the purchaser of assets] is a 'successor' within the

---

**2.** "This agreement shall be binding upon the parties hereto, their heirs, executors, administra-

tors, successors and assigns."

meaning of the agreement even though it was not a 'successor' within the meaning of *Fall River Dyeing.*"

On appeal, we review the district court's grant of summary judgment to the Union *de novo.* However, our review of the arbitrator's decision is a very limited one. *United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 568, 80 S.Ct. 1343, 1346–47, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 596, 599, 80 S.Ct. 1358, 1360, 1362, 4 L.Ed.2d 1424 (1960) ("It is the arbitrator's construction [of the collective bargaining agreement] which was bargained for; and so far as the arbitrator's decision concerns [the] construction of the contract, the courts have no business overruling him because their interpretation is different from his.").

The Supreme Court recently stressed the narrowness of that review in *United Paperworkers International Union v. Misco, Inc.,* 484 U.S. 29, 38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987):

The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract.... [A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.

■ While the "arbitrator's award can and should be overturned if the arbitrator exceeds his authority," the "award is presumed to be legitimate as long as it *draws its essence from the collective bargaining agreement.*" *Roy Stone Transfer Corp. v. Teamsters, Chauffeurs, etc. Local Union No. 22,* 752 F.2d 949, 951 (4th Cir.1985) (emphasis added).

Zady Natey has contended that the arbitrator, in interpreting the successors and assigns clause, exceeded his authority because the term "successor" has a single meaning within labor law, as enunciated by the Supreme Court in *Fall River Dyeing, supra,* that meaning should have been imparted to the agreement it entered with the Union.

■ In *Fall River Dyeing,* the Supreme Court considered when a new employer, succeeding in another's business, has an obligation to bargain with the union representing the predecessor's employees. The Court offered a two-part answer to that question: the Court first outlined the proper approach to be taken to determine whether a new company was a successor to the old, and then it explained when a successor had an obligation to bargain. The Court concluded that a new company is a successor if it has " 'acquired substantial assets of its predecessor and continued, without interruption or substantial change, the predecessor's business operations.' " 482 U.S. at 43, 107 S.Ct. at 2236 (quoting *Golden State Bottling Co. v. NLRB,* 414 U.S. 168, 184, 94 S.Ct. 414, 425, 38 L.Ed.2d 388 (1973)). If it is indeed the successor to the old company, a new company has an obligation to bargain with the union if it employs a majority of the predecessor's employees. 482 U.S. at 46, 107 S.Ct. at 2237 (citing *NLRB v. Burns Int'l Security Services, Inc.,* 406 U.S. 272, 278–279, 92 S.Ct. 1571, 1577–78, 32 L.Ed.2d 61 (1972)).

In the present case, the new company did acquire substantial assets of its predecessor and continued, without substantial change, its predecessor's business operations. Thus, under *Fall River Dyeing,* the purchasers of Mash's Inc. appear to be successors to Zady Natey. But, even if they were not successors, Zady Natey had nevertheless contracted to provide those things which somebody as a successor would provide.

■ Whether, as a successor, the purchaser would be bound to bargain, independently of the substantive provisions of the predecessor's agreement, is a quite distinct question from whether the seller, who was a party to the agreement, would be bound. The determinative question, therefore, is whether the failure of Zady Natey to sell to a successor who would bind itself to adhere to the substantive terms of the collective bargaining agreement forced Zady Natey to remedy the resulting disadvantage to its employees.

The arbitrator's answer to that question, that Zady Natey was liable under the agreement, drew its essence from the collective bargaining agreement. First, the literal language refers to "heirs, executors, administrators and assigns," indicating, as the district court pointed out, "that the parties intended that the section should be construed generically, *i.e.* to apply to all persons who followed in the footsteps of old Mash's." Second, Nathan Mash's [3] attorney testified that "there was no contemplation of any change or successors being involved unless he died" which also suggests that the parties were using the language in a generic sense. Third, if the successors and assigns clause was read as Zady Natey has proposed, it would be mere surplusage. Finally, no other provision in the agreement suggests that the parties intended to use the word successor in the extremely limited sense urged by Zady Natey. Lawyer usage of the term is common and more inclusive.

In light of the foregoing, the district court's conclusion appears sound: Under these circumstances the term "successor" was, at most, ambiguous, and the arbitrator acted well within his authority in interpreting it as applying to anyone who followed old Mash's [Zady Natey] ... Therefore, under section 13 (as permissibly construed by the arbitrator) old Mash's agreed that anyone who might purchase its stock or assets or otherwise succeed it would be bound by the agreement whether or not he would be bound to the agreement as a matter of labor law. By entering into that agreement old Mash's could not, of course, bind the purchaser. However, the question presented here is not whether new Mash's, as purchaser, was bound by the collective bargaining agreement but whether Zady Natey, as the seller, was under a contractual obligation which it breached.

Thus, at a minimum, Zady Natey had an obligation to make a good faith attempt to find a purchaser who would accept the agreement with the Union (or at least not to assist the purchaser to avoid the agreement).

The Union has contended that the collective bargaining agreement imposed an affirmative obligation upon Zady Natey to find a successor who was willing to assume Zady Natey's obligations under the collective bargaining agreement. The district court was hesitant to infer from the bare successors and assigns clause an affirmative obligation actually to succeed in finding a purchaser who would continue the agreement. It reasoned that "[s]uch an obligation is an extraordinary one which mere silence would not seem to imply." Instead, it concluded, and we agree, that the collective bargaining agreement at least obliged Zady Natey to act in good faith with respect to its employees when selling the business. Since Zady Natey has failed to fulfill the duty of good faith and fair dealing, it is not necessary for us to determine whether Zady Natey should be held to the higher standard advanced by the Union even if good faith efforts to find a purchaser were made but proved unsuccessful.

The district court effectually summarized how Zady Natey failed to act in good faith with respect to the Union:

Zady Natey did not simply fail affirmatively to find a purchaser who would continue its agreement with the Union. Rather, in order to maximize the price which Nathan Mash received for the sale of its assets, Zady Natey took affirmative steps, prior to the consummation of the sale and while it was still bound by the collective bargaining agreement, to make it impossible for the successors and assigns clause to be performed. Specifically, as a condition of the sale, it discharged all of its employees before the sale was closed for the very purpose of assuring that new Mash's would not be bound by the collective bargaining agreement despite section 13's mandate to the contrary. It also agreed to keep the proposed sale secret, thereby precluding the Union from attempting to obtain an injunction against its consummation.

Zady Natey has challenged the district judge's ruling on the ground that his reasoning was not precisely that forwarded by the arbitrator in granting the award. The dis-

3. He was the founder and owner of Mash's Inc.

trict court, however, recognized that "the arbitrator did not articulate his ruling in precisely that fashion," *i.e.,* as a violation of the duty of good faith and fair dealing which was part of the employer's obligation under the collective bargaining agreement. "Instead, offended by what he perceived as Zady Natey's and Mash's bad faith, [the arbitrator] railed against their conduct in somewhat vehement, rather than coolly analytical, language." But, the district judge correctly ruled that "that fact alone ... provides no basis for overturning the arbitrator's award." *See, e.g., Enterprise Wheel,* 363 U.S. at 598, 80 S.Ct. at 1361.

The district court's grant of summary judgment in favor of Local 27 and against Zady Natey is

*AFFIRMED.*

HILL, Senior Circuit Judge, concurring:

Because I conclude that the arbitrator drew his conclusions from the essence of the agreement at issue, I concur in the judgment enforcing the award. Whether or not I should have reached the conclusions reached by the arbitrator is of no moment.